UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MARY LOU MCCALL** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 07-5447** |
| | * | |
| **FOCUS WORLDWIDE TELEVISION** | * | |
| **NETWORK, INC., PHILLIP HANNAN and** | * | |
| **CHARLENE VANCE** | * | **SECTION "L"(4)** |

### ORDER & REASONS

Before the Court are Plaintiff's Motion for Summary Judgment (Rec. Doc. No. 52) and Defendants' Motion for Summary Judgment to Dismiss for Lack of Subject Matter Jurisdiction (Rec. Doc. No. 59). For the following reasons the Plaintiff's Motion is DENIED and the Defendants' Motion is GRANTED.

**I.     BACKGROUND**

In approximately 1989, Mary Lou McCall began working with Focus Worldwide Television Network, Inc. ("Focus") and Archbishop Phillip Hannan in producing faith-based documentaries and television programs dealing with topics relevant to the Roman Catholic community. Ms. McCall alleges that she became one of two members of Focus (Archbishop Hannan being the other), and that Archbishop Hannan, acting as President of Focus, entered into an employment agreement with Ms. McCall in December of 1993, effective January 1, 1994. Pursuant to this employment agreement, Ms. McCall was to receive a salary of $60,000 per year. Additionally, Focus agreed to pay premiums of $10,000 per year for an insurance policy "funded in her name and on her behalf." Def.'s Mem. Supp. Summ. J. (Rec. Doc. No. 59-2). Ms. McCall alleges that Focus has not paid the premiums on such insurance since 1999.

Further, she claims that after Archbishop Hannan became concerned that Ms. McCall might leave her employment with Focus to seek more lucrative employment as a secular journalist, Ms. McCall and Archbishop Hannan, again in his capacity as President of Focus, entered into two additional "employment agreements" on March 20, 2003, that granted Ms. McCall complete job security at Focus for as long as she desired to remain. The first of these additional employment agreements was a Resolution of the Board of Directors of Focus which states that because she is a shareholder and vice president of the board of directors, "she is in a position to continue in her present capacity as the Director of programming of Focus for as long as she desires." *See*, Amended Complaint, ¶ XI(a), Rec. Doc. No. 43. The second of these additional employment agreements was an agreement whereby Archbishop Hannan transferred production equipment to Ms. McCall in consideration of her prior work at Focus and other valuable consideration. The agreement documenting the transfer stated that Ms. McCall agreed to continue producing programs for Focus "until such time as the Focus mission ceases to exist or until such other time as mutually agreed upon." *See*, Amended Complaint, ¶ XI(b), Rec. Doc. No. 43.

Ms. McCall alleges that as Archbishop Hannan's health declined, a power struggle within Focus took place. In April of 2007, Archbishop Hannan sent a notice of a special meeting of the membership of Focus to Ms. McCall and Mr. Charles Read[1] for the purpose of selecting new members, directors and officers. This special meeting was to take place on May 8, 2007. Ms. McCall was apparently not a candidate for any position. On May 2, 2007, Archbishop Hannan advised Ms. McCall by letter that her employment would be terminated effective

---

[1] According to Ms. McCall, Mr. Read was made a member of Focus, but that membership was revoked in March of 2003 by a unanimous consent resolution.

immediately. Ms. McCall claims that the stated reasons for her dismissal did not accurately state the facts, and were intentionally calculated to harm her reputation in the New Orleans broadcasting community.

On September 6, 2007, Ms. McCall filed suit against Focus, Archbishop Hannan and Charlene Vance for improperly terminating her employment with Focus. The Plaintiff asserted the following causes of action: first, for recovery of benefits under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA") against Focus and Archbishop Hannan; second, for breach of contract against Focus; third, for defamation against Focus and Archbishop Hannan; and fourth, for intentional interference with contract against Charlene Vance and Archbishop Hannan. The Plaintiff further sought a judgment declaring her the owner of certain movable property possessed by Focus, ordering that the movable property be seized and sequestered, and awarding her damages, penalties and royalties for the retail sale of videos.

On August 8, 2008, the Court denied the Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. No. 23) and Defendants' Cross Motion for Partial Summary Judgment and First Motion to Dismiss (Rec. Doc. No. 26) without prejudice and preserving the parties' right to re-file their motions after the parties conducted some discovery.

On September 17, 2008, the Plaintiff filed an amended complaint to supplement or clarify the claims asserted in the original complaint. The Defendants have answered and denied liability. The Defendants deny that the claims in the instant case constitute ERISA claims.

**II.     THE MOTIONS**

The parties have filed cross motions for summary judgment. In the instant motions, the parties do not dispute that Focus entered into an employment agreement whereby Focus

would pay $10,000 annually for an insurance policy for the Plaintiff. Nor do the parties dispute that the policy was purchased and that Focus paid some premiums. The sole issue presented by these motions is whether the agreement between Ms. McCall and Focus created an employee benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.

The Defendants have filed a motion for summary judgment asking the Court to dismiss the Plaintiff's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The Defendants contend that there was no "plan" established that meets the requirements of ERISA. No such policy had ever been purchased by Focus for any other employee before or since. The employer had no ongoing administrative involvement. Further, the Defendants argue that the agreement was simply an attempt to formalize the employee-employer relationship, and that the personal employment agreement does not demonstrate the requisite intent to provide benefits to its employees.

In the Plaintiff's motion for summary judgment, the Plaintiff argues that the agreement is subject to ERISA in light of the purpose of ERISA and the expansive reach of federal jurisdiction over employer-created benefit plans. The Plaintiff further contends that Focus established and maintained an ERISA plan with intent to provide Ms. McCall with employee benefits. The Plaintiff argues that minimal additional involvement by the employer beyond the payment of premiums alone brings the plan within the definition of an ERISA plan. Finally, the Plaintiff urges the Court to exercise supplemental jurisdiction in the event the ERISA claim is dismissed.

### III.  LAW & ANALYSIS

#### A. Summary Judgment Motion Standard

Summary judgment is appropriate in a case if "there is no genuine issues as to any material fact." Fed. R. Civ. P. 56(c). "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Products Liability Litigation*, 2007 WL 1952964, *4 (E.D. La. July 3, 2007). In determining whether a genuine issue of material fact exists, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). But because "only those disputes over facts that might affect the outcome of the lawsuit under governing substantive law will preclude summary judgment," questions that are unnecessary to the resolution of a particular issue "will not be counted." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987).

### B. Motion to Dismiss Standard

A party may challenge the subject matter jurisdiction of the Court pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. "Lack of subject matter jurisdiction may be found in any of one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle the plaintiff to relief." *Id.* "A federal district court may not entertain a case that does not fall within the judicial power of Article III of the Constitution and a statutory grant of subject matter jurisdiction. In other words, a case can only be properly filed in federal court if it invokes an independent basis of federal subject matter jurisdiction." 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3522 (3d ed. 2008). If a district

court is presented with a motion to dismiss with a motion for summary judgment in the alternative, the court's first inquiry must be whether subject matter jurisdiction exists before it can continue with a determination as to whether summary judgment should be granted or not. *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir.1981).

### C. Existence of an ERISA "Plan"

In 1974 Congress enacted the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"), which gives federal courts subject matter jurisdiction over certain pension and welfare plans. "ERISA applies to any employee benefit plan if it is established or maintained by an employer or an employee organization engaged in commerce or in any industry or activity affecting commerce." *Memorial Hospital System v. Northbrook Life Insurance Company*, 904 F.2d 236, 240 (5th Cir.1990).

The parties dispute whether or not the arrangement with the Plaintiff is an employee welfare benefit plan within the terms of ERISA. Under ERISA an "employee welfare benefit plan" means any plan "established or maintained by an employer ... for the purpose of providing for its participants or beneficiaries, through the purchase of insurance ..." benefits in the event of death. 29 U.S.C. § 1002(1). To constitute an ERISA plan, the arrangement must be (1) a plan, (2) not excluded from ERISA coverage by the safe-harbor provisions established by the Department of Labor, and (3) established or maintained by the employer with the intent to benefit employees. *Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276 (5th Cir. 2008). Neither party contends that the arrangement falls within the Department of Labor safe-harbor provisions.

It is not necessary for a plan to be formalized by a detailed written document. It may be created by less formal means. The Fifth Circuit has adopted the Eleventh Circuit's test for determination of whether an ERISA plan has been established informally. An ERISA plan is

established "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (en banc ). A formal document designated as "the Plan" is not required to establish that an ERISA plan exists; otherwise employees could avoid federal regulation merely by failing to memorialize their employee benefit programs in a separate document so designated. *Memorial Hospital*, 904 F.2d at 240-41 (footnotes omitted).

The particular arrangement in this case likely created a plan as that term is used in ERISA. The agreement provided, "[A]n insurance policy with an annual premium of $10,000 will be funded in [Ms. McCall's] name and on her behalf." A reasonable person could easily determine the intended benefits, the source of financing and that the beneficiary was Ms. McCall. The question, however, is whether this plan is an employee welfare benefit plan subject to ERISA. Assuming for the purposes of the instant motions that a plan exists, the Court finds that Focus did not establish or maintain a plan with intent to provide benefits to its employees. The agreement lacks the elements required in the third prong of the analysis, which is broken down into two elements: (1) whether an employer established or maintained the plan; and (2) whether the employer intended to provide benefits to its employees. *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993).

The parties dispute whether the purchase of a life insurance policy for a single employee can demonstrate the requisite intent to establish or maintain a plan subject to ERISA. The Fifth Circuit has held that an employer's "bare purchase" of an insurance policy does not establish an ERISA plan. *Taggart Corp. v. Life and Health Benefits Admin., Inc.*, 617 F.2d 1208, 1211 (5th Cir. 1980). However, the purchase of a policy or multiple policies covering a class of

employees offers substantial evidence that a plan, fund, or program has been established. *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 242 (5th Cir. 1990), citing *Donovan,* 688 F.2d at 1373.

In the instant case, no such policy was ever purchased for any other employee before or after the agreement with Ms. McCall. If an employer does no more than purchase insurance for an employee and has no further involvement with the collection of premiums, administration of the policy, or submission of claims, the employer has not established an ERISA plan. *Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276 (5th Cir. 2008) (finding that employer's payment of premiums on two different policies for two employees failed to demonstrate intent to establish employee welfare benefit plan under ERISA). The Defendants paid the premiums for Ms. McCall's life insurance policy, but did nothing more, and did not pay the premiums for policies for any other employees.

Further, other than the payment of premiums, the Defendants had no role in determining the calculation or adjustment of future benefits, nor did the Defendants handle the administration of the policy. "The focus of [ERISA] is on the administrative integrity of benefit plans-which presumes that some type of administrative activity is taking place." *Fort Halifax Packing Co., Inc. V. Coyne*, 482 U.S. 1, 15 (1987). The payments did not require the exercise of discretion or any ongoing administrative scheme, beyond the simple mechanical application of the $10,000 payment each year. See generally *Tinoco v. Marine Chartering Co., Inc.*, 311 F.3d 617 (5th Cir. 2002) (noting that "severance plans that provide certain benefits over a period of time do not necessarily require an ongoing administrative scheme."). Focus established no administrative scheme for the regulation and administration of plan funds. The agreement established no procedure for the naming of fiduciaries, and no arrangement was in place for

placing any assets in trust. Although an ERISA plan may consist of a single employee, the Court finds that the plan in the instant case does not involve the requisite intent to establish and maintain a benefit for Focus employees.

The agreement with the Plaintiff constituted the bare purchase of an insurance policy for a single employee. Focus entered into a unique employment contract whereby the employer would contribute $10,000 annually to Ms. McCall's life insurance. Considering the purpose of ERISA and the circumstances surrounding the arrangement in this case, the Court finds that Focus did not establish or maintain a plan subject to ERISA.

### D. Supplemental Jurisdiction

The Plaintiff urges the Court to exercise supplemental jurisdiction in the event the Plaintiff's ERISA claims are dismissed. 28 U.S.C. § 1367(c) provides supplemental jurisdiction "in any civil action of which the district courts have original jurisdiction[.]" While a federal court may exercise supplemental jurisdiction over a state law cause of action, a federal "court must have [original] jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims. *Delancey v. Chicago Ins. Co.*, 2004 WL 2694910 (E.D. La. Nov. 22, 2004). "[O]ne of the plaintiff's claims must invoke an independent basis of federal subject matter jurisdiction before supplemental jurisdiction can become relevant." 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3523 (3d ed. 2008).

The difference between dismissing a complaint because the court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) versus where the plaintiff has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a difference not of degree but of kind. *See, e.g., Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). This difference is especially significant when it comes to the Court's power to exercise supplemental

jurisdiction. "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.... In contrast, when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367...." *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 502 (2006); *see also* 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3521 (3d ed. 2008) (Supplemental jurisdiction "applies to claims asserted in the context of a case that has already invoked subject matter jurisdiction.").

In the instant case, the issue is whether the absence of an ERISA plan indicates that the Court lacks subject matter jurisdiction, or whether the Plaintiff has merely failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court finds that the Defendant's motion appropriately invokes a Rule 12(b)(1) motion to dismiss, as the Court finds that subject matter jurisdiction does not exist based on the undisputed facts of the case.

The Court grants the Defendant's Motion to Dismiss with great reluctance. The case has been pending since September 6, 2007, and the Motion to Dismiss was taken under advisement on February 25, 2009. The parties have conducted a great deal of discovery. However, the Fifth Circuit has clearly stated that the existence of an ERISA plan is a jurisdictional issue. *See Taggart Corp. v. Life and Health Benefits Admin., Inc.*, 617 F.2d 1208, 1211 (5th Cir. 1980) (where employee payment plan did not constitute a "plan, fund, or program," within the meaning of ERISA, district court's appropriately dismissed pendent claims because it lacked federal subject matter jurisdiction) . "Where federal subject matter jurisdiction is based on ERISA, but the evidence fails to establish the existence of an ERISA plan, the claim must be dismissed for lack of subject matter jurisdiction." *Tinoco v. Marine Chartering Co., Inc.*, 311 F.3d 617 (5th Cir. 2002). Since the evidence fails to establish an ERISA claim, the Court

hereby dismisses all claims over which it has original jurisdiction and the Court finds the exercise of supplemental jurisdiction would be inappropriate.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment is DENIED.

IT IS FURTHER ORDERED that the Defendants' Motion for Summary Judgment to Dismiss for Lack of Subject Matter Jurisdiction is GRANTED. The Plaintiff's claim is hereby DISMISSED, with costs and with prejudice.

New Orleans, Louisiana, this 17th day of April, 2009.

_____
UNITED STATES DISTRICT JUDGE